MAUREEN PEYTON KING (NY Bar No. 4119376)
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
Email: kingmp@sec.gov
Telephone: (212) 336-0111

LOCAL COUNSEL:
STEPHEN KAM (Cal. Bar. No. 327576)
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Email: KamS@sec.gov
Telephone: (323) 302-7465
Facsimile: (213) 443-1904

Attorneys for Plaintiff
Securities and Exchange Commission

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>RED ROCK SECURED, LLC, SEAN KELLY, ANTHONY SPENCER, AND JEFFREY WARD,<br><br>Defendants. | Case No. 2:23-cv-3682-RGK-PVC<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY IN SUPPORT OF ITS MOTION FOR CIVIL CONTEMPT SANCTIONS AGAINST DEFENDANT ANTHONY SPENCER**<br><br>Judge:　　　　Hon. R. Gary Klausner<br>Hearing Date: April 14, 2025<br>Time:　　　　9 a.m.<br>Location:　　Courtroom 850<br><br>Action Filed:  May 15, 2023<br>Post-Judgment. |

# PRELIMINARY STATEMENT

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this Reply Memorandum ("Reply") in Support of its Motion for Civil Contempt Sanctions against Anthony Spencer ("Motion") as Spencer continues to defy the Court's Order that he pay $1 million dollars to the SEC within 15 days of entry of its February 22, 2025 Order finding Spencer in contempt ("Contempt Order"). DE 180. Since the Order entered, Spencer has paid only $325. Declaration of Maureen Peyton King ("King Sanctions Decl.") ¶4, DE 186-2.

Spencer's opposition arguments ("Opposition") as to why the Court should not impose sanctions fall short. DE 187. Spencer claims: payment is impossible; that he has acted in good faith; that there is no threat of continued contumacy; and that sanctions, particularly incarceration, would have the opposite effect of their purpose. *Id.* The Opposition supports its flawed arguments with obfuscation and misstatements, claiming, among other things, that: "Spencer does not have access to the trust or authority to control or distribute its funds;" the trust predates his time at Red Rock Secured; he receives nothing from the trust; and incarceration would prevent Spencer from paying the SEC. DE 187, 187-1, ¶10, 15-17. What's more, it appears that the Spencer Elliot Family Trust ("SELT") now attempts to limit the Court's jurisdiction over - and the SEC's ability to collect from - SELT's assets through a state court action.

# ARGUMENT

**I.     Spencer Continues to Defy the Court's Contempt Order.**

On February 7, 2025, the Court held Spencer in contempt and ordered Spencer to, among other things, pay the SEC $1 million by February 22, 2025. When Spencer did not, the SEC sought appropriate sanctions, which Spencer now opposes. DE 186-7. Thus, the issue before the Court is what, if any, sanctions should be imposed for Spencer's clear defiance of the Court's Contempt Order. As to the nature of the sanctions, it seems clear that Spencer has been unmotivated by Court orders to pay the

SEC. DE 150 (Final Judgment) and 180 (Contempt Order). Thus, another order, requiring Spencer to pay monetary sanctions seems unlikely to coerce his compliance. The specter of incarceration, however, will likely motivate Spencer to pay.

## II. Spencer's Arguments Against Sanctions Should Fail.

Spencer's arguments as to why the Court should not impose sanctions fall short. Spencer claims: payment is impossible; that he has acted in good faith; that there is no threat of continued contumacy; and that sanctions, particularly incarceration, would have the opposite effect of their intended purpose.

As to impossibility and good faith, both are arguments that the Court has already considered in rejecting Spencer's defenses to contempt. And it does not appear the facts have changed. In any event, the Court has already determined that Spencer cannot avoid paying the SEC what he owes because "it is clear that Defendant is responsible for moving millions of dollars of assets into [his family trust]…." DE 180.

What's more, Spencer's payment plan offers belie his claims of good faith. First, Spencer continues to fail to include SELT in any discussion of his ability to pay.[1] Second, Spencer is currently offering to pay the SEC $675 per month. DE 187-

---

[1] Spencer reasons that he "established a family trust long before SEC's investigation into Red Rock Secured, LLC and long before Spencer started working for his former employer." Spencer and his wife did execute a *revocable* trust in July 2015. DE 187-9, Ex. A, Sec. 2.2 (emphasis added). Under California law, there would be no dispute that the SEC could reach the revocable trust's assets to satisfy the Final Judgment. "If the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor." Cal. Prob. Code § 18200 (West). However, on October 20, 2020, the Spencers executed documents to amend their trust – making it – nominally - irrevocable with a stated purpose or creditor avoidance - and transferred "to our Trustee the property listed in Schedule A, attached to this agreement…." *Id*. The property at Schedule A includes the Spencers' home, cars, bank accounts, and insurance policies. DE 187-9. So the creation of and asset transfers to SELT occurred in 2020, well after Spencer was installed as a senior executive of Red Rock Secured, LLC, ("Red Rock") in 2018 – and during the time the SEC alleges Spencer was

3

7, 187 (Opp.). $675 is far less than Spencer's ability to pay when SELT's assets are considered.

### III. SELT's Assets Should Be Available to Satisfy the Final Judgment.

As set forth more fully in the SEC's contempt application, Spencer observed no obvious distinction between a personal bank account and SELT. Spencer did not treat SELT as anything but a personal account that supported his lifestyle. And he discarded SELT's formalities. Spencer testified that when he seeks to disburse funds from SELT, he simply accesses a SELT account online and disburses the funds or withdraws cash. Spencer Depo, King Decl. ¶5, Ex. 3 at tr. 28. DE 156-5. Over the twelve months ended October 24, 2024, SELT's Bank of America account x8676 disbursed approximately $626,538. Wraga Decl. ¶7, Table 3, DE 156-23. SELT paid for virtually all the Spencers' personal expenses—everything from auto expenses to orthodontics SFS and BofA statements, King Decl. ¶5, Ex. 1, 3 at tr. 31, 32, 41, 53, 54, DE 156-2, 3, 5, 7, 5-16, DE 156- 2-3, 7-18. Spencer concedes that, outside of the trust, he does not have sufficient assets personally to pay his monthly expenses. Spencer Depo, King Decl. ¶5, Ex. 3 at tr. 30, DE 156-2, 5.

Spencer now claims he receives nothing from SELT. This is clearly contradicted by the Opposition's Exhibit G, paragraph 9, which makes clear that SELT subsidizes Spencer's home expenses. DE 187-9. "Under Paragraph 5.01(2) of the Trust, and starting on January 1, 2025, the Trust permitted the Settlors to enter into a lease with the Trustee to remain in their residence, but in consideration therefore, they were required to pay rent of no less than 50% fair market rent to the Trust." Thus, Spencer continues to draw a benefit from the trust in the form of a rent subsidy, underscoring the preposterousness of his pretending that SELT is not Spencer's

---

engaged in fraud. DE 1, ¶14. Thus, Spencer's representations about SELT's formation are as misleading as the timeframe is informative.

personal piggybank.² Moreover, the fact that Spencer has paused his well-established practice of withdrawing funds from SELT is not an indication that he will not again commence this practice. Based on his historical treatment of SELT, Spencer should not now be permitted to claim its protections.

The Court need not indulge the farce Spencer seeks to perpetrate, claiming that SELT's funds are unavailable to him. The Supreme Court recognizes the equitable nature of the SEC's disgorgement remedy. *See Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 140 S. Ct. 1936, 207 L. Ed. 2d 401 (2020). Further, "[t]he Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies *to the necessities of particular cases,* especially where a federal agency seeks enforcement in the public interest." *S.E.C. v. Hickey*, 322 F.3d 1123, 1131 (9th Cir.), *opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey*, 335 F.3d 834 (9th Cir. 2003) (internal citation omitted). "The federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *S.E.C. v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). Here, fashioning any ancillary relief needed to require Spencer to pay the Court-ordered disgorgement is entirely appropriate.

Further, the Ninth Circuit has recognized that state law may not control "in determining the permitted scope of remedial orders under federal regulatory statutes." *S.E.C. v. Hickey,* 322 F.3d 1123, 1131 (9th Cir. 2003) (internal cite omitted). In reaching its conclusion, the Ninth Circuit observed that: "Hickey may have been clever enough to organize a completely separate, successful entity, and construct a unique employment compensation agreement covering all of his personal expenses

---

² The SEC notes that Spencer asserts – without support – that the fair market value of the rent for his home is approximately $5,550 per month. Assuming that is the case, if Spencer were to pay what he claims SELT requires, more than 50% of the fair market value, he would be required to pay approximately $2,751. DE 175-1, ¶9 (Spencer Decl.). By paying over $1,200 more into SELT monthly, Spencer inflates his expenses and shelters more income in SELT.

using corporate assets, does not put him beyond the reach of a court's powers of disgorgement." *Hickey* at 1131–32. Likewise, here, the Court should not focus on state law regarding trusts or observe formalities that Spencer himself did not. Instead, the Court should use its inherent equitable authority to require Spencer to pay what he owes from SELT's assets particularly where, analogous to Hickey, Spencer erected an entity, SELT, to cover all his personal expenses while attempting to shield them.

### IV. Without Sanctions Spencer's Continued Contumacy is Assured.

Spencer's Opposition further claims that there is no threat of Spencer's continued contumacy while incongruously maintaining that Spencer will not pay the Court-ordered upfront payment. DE 187. From the SEC's perspective, there is no prospect of Spencer's voluntary compliance with the Court's Order. Thus, sanctions are entirely warranted.

### V. Appropriate Sanctions up to Incarceration Are Appropriate.

Spencer's assertions that incarceration is not an appropriate remedy and that it would have the opposite of the intended consequence are plainly wrong. First, courts effectively use incarceration to address failure to pay the SEC. *See e.g. United States Sec. & Exch. Comm'n v. Bronson*, No. 22-1045-CV, 2022 WL 5237474, at *1 (2d Cir. Oct. 6, 2022) (recounting two periods of incarceration for an SEC defendant who declined to pay what he owed). Next, in the civil contempt context, Spencer's incarceration will span only the duration of his defiance of the Court's Order to pay the SEC. Thus, any interruption to Spencer's purported job search or home life is entirely within his control. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 US 821, 828 (1994) ("The paradigmatic coercive, civil contempt sanction...involves confining a contemnor indefinitely until he complies with an affirmative command such as an order to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance"). Spencer need only comply with the Court's Order to spare himself or free himself from incarceration.

### VI. SELT Seeks to Limit the Court's Jurisdiction Through a State Action.

To further thwart this Court's jurisdiction over SELT, on March 20, 2025, SELT filed an action in the Superior Court of the State of California for the County of Los Angeles – Central District, *In the Matter of The Spencer Elliot Living Trust, dated July 20,* 2015, 25STPB03270 (2025), a copy of which is docketed at DE 187-9 (the "Petition"). The Petition seeks instructions regarding transfers of certain assets to SELT and requests that the state court rule that "[t]he Trust has complied with all if its obligations and is not subject to any further liability from the SEC based on Settlor Anthony Spencer's judgment in the Federal Action." *Id*. Thus, undaunted by this Court's finding of contempt, Spencer and SELT have now sought a ruling to undercut this Court's authority. The SEC will intervene in the state court action and seek its removal to this Court, to avoid, among other things, potentially conflicting rulings.

### CONCLUSION

For these reasons, the SEC respectfully requests that the Court impose appropriate civil contempt sanctions against Spencer.

Respectfully submitted,

Dated: March 28, 2025

*/s/ Maureen Peyton King*
Maureen Peyton King
Attorney for Plaintiff
Securities and Exchange Commission
100 Pearl Street, Suite 20-100
New York, N.Y. 10004-2616
Email:  kingmp@sec.gov
Telephone: (212) 336-0111

**Local Rule 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiff Securities and Exchange Commission, certifies that this brief complies with the word limit of L.R. 11-6.1 and the Court's Individual Practice 6, which requires that Memoranda of Points and Authorities shall not exceed 20 pages, nor exceed 5,600 words.

Dated: March 28, 2025

/s/ *Maureen Peyton King*
MAUREEN PEYTON KING
Attorney for Plaintiff
Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
100 Pearl Street, Suite 20-100, New York, NY 10004-2616
Telephone No. (212) 336-0111

On March 28, 2025, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S REPLY IN SUPPORT OF ITS MOTION FOR CIVIL CONTEMPT SANCTIONS AGAINST DEFENDANT ANTHONY SPENCER** (and attachments thereto) on all the parties to this action:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: March 28, 2025                    */s/ Maureen Peyton King*
                                        Maureen Peyton King