THE TORREY FIRM PC
JUDD GRUTMAN, State Bar No. 275304
  *judd@torreyfirm.com*
REBECCA L. TORREY, State Bar No. 153866
  *rebecca@torreyfirm.com*
1626 Montana Avenue, Suite 647
Santa Monica, California 90403
Telephone: (310) 310-2992
Facsimile: (424) 414-1712

Attorneys for Defendants
ANTHONY SPENCER and
JEFFREY WARD

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiffs,<br><br>     v.<br><br>RED ROCK SECURED, LLC; SEAN KELLY; ANTHONY SPENCER; AND JEFFREY WARD<br><br>           Defendants. | Case No. 2:23-cv-03682 RGK-PVC [Assigned to the Hon. R. Gary Klausner and Magistrate Judge Pedro V. Castillo]<br><br>**DEFENDANT ANTHONY SPENCER'S FEDERAL RULE 60(B) MOTION FOR RELIEF FROM THE JUDGMENT**<br><br>*[Filed concurrently with Declarations of Anthony Spencer and Judd Grutman and [Proposed] Order]*<br><br>Judge: Hon. R. Gary Klausner<br>Date:  May 27, 2025<br>Time:  9:00 a.m.<br>Place:  Courtroom 850, 8th Floor |

DEFENDANT ANTHONY SPENCER'S RULE 60(B) MOTION FOR RELIEF FROM THE JUDGMENT

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 27, 2025, at 9:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable R. Gary Klausner of the United States District Court for the Central District of California, in Courtroom 850, on the 8th floor of the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, Defendant Anthony Spencer ("Defendant"), will and hereby does move this Court for an Order modifying the disgorgement, interest and penalty and related terms concerning Defendant in the Final Judgment ("Judgment") in this case (Dkt. No. 150). This motion is made pursuant to Federal Rule of Civil Procedure 60(b), subsection (5) or, alternatively subsection (6), as continuing to apply the Judgment to Defendant is no longer equitable and justice requires relief.

This motion[1] is based on this notice, the attached memorandum of points and authorities, the declarations in support, the files and pleadings on record in this matter, and any other matter that may be properly considered.

DATED:  April 23, 2025          THE TORREY FIRM PC

By:    /s/ Judd Grutman
       JUDD GRUTMAN
       Attorneys for Defendant
       ANTHONY SPENCER

---

[1] This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 21, 2025.

ii

DEFENDANT ANTHONY SPENCER'S RULE 60(B) MOTION FOR RELIEF FROM THE JUDGMENT

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................. 1

II.  STATEMENT OF FACTS AND BACKGROUND ............................ 3

    A.  The Amended Complaint and Allegations Against
       Defendant. ............................................................... 3

    B.  The Parties Summary Judgment Briefing............................ 4

    C.  Mediation and Judgment. ............................................. 6

    D.  Additional Relevant Pre- and Post-Judgment Discovery. ...... 7

    E.  SEC Refused to Agree to a Payment Plan. ......................... 8

    F.  Red Rock Went Out of Business. .................................... 9

    G.  SEC Moved for Contempt Against Defendant. .................... 9

    H.  The Prices of Gold and Silver Rose Despite SEC's
       Prediction. ............................................................... 10

III.  LEGAL STANDARD ........................................................... 10

IV.  LEGAL ANALYSIS ............................................................. 11

    A.  Changes in Circumstances Require Modification of the
       Judgment Under Rule 60(b)(5).................................... 11

       1.  The current prices of gold and silver negate the victim-
          benefit requirement for disgorgement. ...................... 12

       2.  SEC's refusal to negotiate payments became an obstacle to
          compliance with the Judgment. .............................. 15

    B.  Extraordinary Circumstances Support Relief for Defendant
       under Rule 60(b)(6). ................................................ 15

V.  CONCLUSION ................................................................... 18

DEFENDANT ANTHONY SPENCER'S RULE 60(B) MOTION FOR
RELIEF FROM THE JUDGMENT

# TABLE OF AUTHORITIES

## CASES

*Bellevue Manor Assocs. v. United States,*
   165 F.3d 1249 (9th Cir. 1999)............................................................11

*California by & through Becerra v. U.S. Env't Prot. Agency,*
   978 F.3d 708 (9th Cir. 2020............................................................12

*Evans v. Williams,*
   206 F.*3d* 1292 (D.C. Cir. 2000)....................................................12

*Fuller v. M.G. Jewelry,*
   950 F.2d *1437* (9th Cir. 1991)........................................................11

*Henson v. Fidelity National Financial, Inc.,*
   943 F.3d *434* (9th Cir. 2019).........................................................15

*Keeling v. Sheet Metal Workers Intern. Ass'n, Local Union*
   *162*, 937 F.2d 408 (9th Cir.1991).................................................16

*Labor / Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.,*
   564 F.3d 1115 (9th Cir. 2009)......................................................12

*Liu v. Sec. & Exch. Comm'n,*
   140 S. Ct. *1936* (2020) ............................................................. *passim*

*Phelps v. Alameida*
   *569 F.3d 1120 (2009)* ...................................................... 15, 16, 17

*Rufo v. Inmates of Suffolk Cty. Jail,*
   502 U.S. 367, 378 (1992)........................................................ 10, 17

*S.E.C. v. Glob. Express Cap. Real Est. Inv. Fund, I, LLC,*
   289 F. App'x 183, 190 (9th Cir. 2008) ......................................... 6

*Schrubb v. Blankenship,*
   No. 219CV06557MWFGJS, 2022 WL 3971054, at *2 (C.D. Cal. July 26, 2022) ..........................................................................................11

*SEC v. Almagarby,*
   92 F.4th *1306* (11th Cir. 2024) ..................................................... 2

*SEC v. Blackburn,*
   15 F.4th *676* (5th Cir. 2021) ....................................................... 13

*SEC v. Commonwealth Equity Services, LLC,*
   No. 24-1427 (1st Cir. 2025)................................................... 2, 17

DEFENDANT ANTHONY SPENCER'S RULE 60(B) MOTION FOR
RELIEF FROM THE JUDGMENT

*SEC v. Govil*
No. 22-1658 (2nd Cir. 2023) ........................................................ 2, 5, 17

*SEC v. Mizrahi*,
2020 WL 61149112, at *2 (C.D. Cal. Oct. 5, 2020) ............................ 14

*Sec. & Exch. Comm'n v. Beck*,
No. 2:22-CV-00812-FWS-JC, 2024 WL 1626280, at *13 (C.D. Cal. Mar.
26, 2024) .................................................................................... 2

*Shuffler v. Heritage Bank*,
720 F.2d 1141 (9th Cir.1983) ........................................................ 17

*Sunnergren v. Cate*,
No. C 12-0979 LHK (PR), 2015 WL 6667478, at *2 (N.D. Cal. Nov. 2,
2015) ......................................................................................... 16

*U.S. Sec. & Exch. Comm'n v. Berkeley Healthcare Dynamics, LLC*,
No. 20-16754, 2022 WL 42807, at *1 (9th Cir. Jan. 5, 2022)................. 2

*United States v. Asarco Inc.*,
430 F.3d 972 (9th Cir. 2005)......................................................... 12

*United States v. Washington*,
593 F.3d 790 (9th Cir. 2010)......................................................... 15

**STATUTES**

15 U.S.C. § 78u(d)(5) ...................................................................... 4

15 U.S.C. §78u(d)(7) ................................................................... 2, 4

Fed. R. Civ. P. 60(b) ............................................................. *passim*

DEFENDANT ANTHONY SPENCER'S RULE 60(B) MOTION FOR
RELIEF FROM THE JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Anthony Spencer ("Defendant") submits the following memorandum of points and authorities in support of his Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 60(b). Changed and extraordinary circumstances require relief from the disgorgement, interest and penalty and corresponding terms concerning Defendant in the April 23, 2024, Final Judgment ("Judgment") that terminated this case.

## I.    INTRODUCTION

Following a settlement between the parties, Defendant, a former salesman of precious metals, was ordered by the Court to disgorge to Plaintiff Securities and Exchange Commission ("SEC") millions of dollars in compensation Defendant had earned over several years from his former employer, Red Rock Secured, LLC ("Red Rock") and pay a penalty and interest on the disgorgement. The Judgment was premised in part on Defendant's sales calls concerning the price and investment value of silver. (Dkt. No. 82-1 at 11:5-15, 16:16-21.) The disgorged funds presumed there were alleged losses of Red Rock's clients resulting from the mark-up Red Rock charged on the precious metals coins the company sold, predominantly silver coins, at the time of sale, as well as commissions Defendant earned on those sales. (Dkt. No. 37 at 5:2-13; Dkt. No. 82-2 at 2:22-24 (citing SEC declaration (Dkt. No. 82-4)).)

While SEC never identified in this case Defendant's victims or their losses, if any, SEC maintained disgorgement was proper because it would benefit "harmed investors" (e.g., Dkt. No. 98 at 19:21-28). SEC did not, however, present evidence of "harmed investors" who had actually incurred a loss by selling their precious metal coins for something less than what they paid Red Rock. Based entirely on SEC's unproven theory of

1

DEFENDANT ANTHONY SPENCER'S RULE 60(B) MOTION FOR RELIEF FROM THE JUDGMENT

the case, the Judgment ordered SEC to hold the disgorged funds until further order. (Dkt. No. 150 at 9:25-26.)

SEC's case theory based on minimal evidence presented to the Court now presents an extraordinary circumstance that requires modification of the Judgment: The SEC's submission, and hence the Judgment based on the submission, was premised on the assumption that Red Rock's clients had incurred losses or would necessarily incur losses because of the difference in price in what they paid and the "spot" price of raw silver at the time of their purchases. According to SEC's expert testimony, clients of Red Rock could experience investment gains only if the value of their coins experienced significant growth, or more than 30%. (Dkt. No. 82-2 11:23-12:3.) After the Judgment was entered, the spot prices of silver and gold – the precious metals at issue here – have skyrocketed, and as much as 56% above what they were at the time of entry of Judgment and 130% more than five years ago when Red Rock's clients made purchases. (See Declaration of Judd Grutman ("Grutman Decl."), ¶ 13).

The Ninth Circuit recently held that the Supreme Court's decision in *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936 (2020) "plainly changed [] existing caselaw governing disgorgement by primary wrongdoers," *U.S. Sec. & Exch. Comm'n v. Berkeley Healthcare Dynamics, LLC*, No. 20-16754, 2022 WL 42807, at *1 (9th Cir. Jan. 5, 2022)[2], such that a client of Red Rock who has not suffered financial harm is not a victim for the purposes of disgorgement. Contrary to *Liu*, and according to SEC's theory

---

[2] The "Ninth Circuit has not addressed whether 15 U.S.C. § 78u(d)(7) overrides any of *Liu's* requirements." *Sec. & Exch. Comm'n v. Beck*, No. 2:22-CV-00812-FWS-JC, 2024 WL 1626280, at *13 (C.D. Cal. Mar. 26, 2024), *reconsideration denied*, No. 2:22-CV-00812-FWS-JC, 2024 WL 2110034 (C.D. Cal. Apr. 1, 2024).

ANTHONY SPENCER'S OPPOSITION TO PLAINIFF'S MOTION FOR ORDER TO SHOW CAUSE FOR CONTEMPT

of financial harm in this case, the changes in spot pricing for gold and silver have wiped out any financial losses for former clients of Red Rock who allegedly suffered losses. Those clients now hold metals worth far more than SEC alleged, putting them undisputably in profit. SEC can no longer maintain that Red Rock clients suffered losses without evidentiary support, especially now that the most relevant evidence – the current market price of silver (and gold) – demonstrates that no losses occurred. Continuing to require disgorgement, interest and a penalty from Defendant is inequitable based on this changed circumstance critically important to the very foundation of the Judgment.

Additionally, for nearly a year, SEC has proactively prevented the parties from entering a payment plan commensurate with Defendant's financial ability to satisfy the Judgment, action on the agency's part that repudiates the Judgment. (Grutman Decl., ¶¶ 8-11.) SEC thwarted Defendant's persistent, good faith efforts to establish a payment plan while one is required in light of Defendant's documented inability to satisfy the Judgment against him. (Dkt. No. 187-1 at 1:19-2:27.) SEC's repudiation of the Judgment is another extraordinary circumstance, unknown at the time Judgment was entered, warranting relief.

Together, or alternatively, these changed circumstances, each extraordinary in and of themselves, necessitate modification of the Judgment under Rule 60(b).

## II.    STATEMENT OF FACTS AND BACKGROUND

### A.    The Amended Complaint and Allegations Against Defendant.

On August 11, 2023, SEC filed the amended and operative complaint in this case. (Dkt. No. 37.) In sum, SEC alleged Defendant, on behalf of and in conjunction with his former employer and its agents, fraudulently

3

1   sold Red Rock's precious metal coins to "at least 700 clients, for a total of

2   more than $50 million" by not disclosing an "upfront markup [that]

3   immediately put clients in a hole and significantly depleted the very

4   retirement assets that Red Rock had advised clients to 'protect.'" (*Id.* at

5   5:2-13.) SEC did not allege specific losses incurred by these clients, if any,

6   but sought an order "to disgorge the ill-gotten gains [Defendant] received

7   **because of the violations alleged**" therein. (Id. at 39:16-19 (Prayer for

8   Relief, requesting disgorgement from Defendant of all earnings "pursuant

9   to Section 21(d)(5) and 21(d)(7) of the Exchange Act [15 U.S.C. §§

10  78u(d)(5), and 78u(d)(7)]") (emphasis added).) SEC also requested civil

11  penalties, interest and injunctive relief against Defendant. (*Id.*, Prayer for

12  Relief.)

13         **B.**     **The Parties' Summary Judgment Briefing.**

14       Prior to entry of the Judgment and the settlement upon which it is

15  premised, both parties filed summary judgment motions and submitted

16  supporting statements of material facts.

17       In its summary judgment papers, SEC argued Defendant engaged in

18  a "fraudulent scheme" that involved "convincing [clients] to liquidate a

19  portion of their retirement securities portfolios" and "inducing" them to

20  purchase Red Rock's precious metals coins "at grossly inflated prices."

21  (Dkt. 82-1 at 1:7-25, 4:16-25, 6:11-24, 8:4-10, 17:22-24, 20:1-8; Dkt. No. 111

22  at 5:6-23, 7:2-13, 7:19-27.) SEC indicated during the relevant period that

23  Red Rock's clients used over $58 million in retirement funds to purchase

24  precious metals coins from Red Rock for $43 million. (Dkt. No. 82-1 at 7:9-

25  22.) SEC also argued Defendant's alleged "false statements were

26  important to Red Rock's clients in making the decision to invest in coins

27  through Red Rock." (*Id.* at 11:5-15, 16:16-21.)

28       Instead of accounting for losses Red Rock's clients actually suffered

ANTHONY SPENCER'S OPPOSITION TO PLAINIFF'S MOTION FOR
ORDER TO SHOW CAUSE FOR CONTEMPT

1  or their subsequent sale of coins purchased from Red Rock, SEC's

2  Statement of Undisputed Facts in support of its motion concluded: "Even if

3  the price of silver had increased by those percentages during those years,

4  because Red Rock charged inordinately high prices for its RTH Coins, **the**

5  **value of RTH Coins would have to have increased by far more**

6  **than 30% for Spencer's clients to have realized any gains from**

7  **their coin purchases**." (Dkt. No. 82-2 at 11:23-12:3 (citing Declaration of

8  Dana S. Samuelson ("Samuelson Decl."), Dkt. No. 82-8 (emphasis added)[3].)

9  This, SEC argued, was unattainable and hence judgment should be

10  entered in favor of Plaintiff.

11      SEC also argued in its briefing to the Court that "[d]isgorgement is

12  appropriate because the record evidence shows that Spencer obtained ill-

13  gotten gains from his securities fraud that may be distributed to his

14  victims: specifically, sales commissions and profits totaling over $2.3

15  million." (Dkt. No. 98 at 19:21-28; Dkt. No. 82-2 at 2:22-24 ("Between 2018

16  and 2021, Spencer received approximately $2 million in commissions and

17  $300,000 in other compensation.")) SEC claimed the Second Circuit's

18  decision in *SEC v. Govil,* 86 F.4th 89, which holds that "an investor who

19  suffered no pecuniary harm as a result of the fraud is not a victim," "has

20  no bearing here" even though SEC presented no evidence of victims or

21  their respective incurred losses, if any. (Dkt. No. 98 at 2):25-28, fn 11.)

22      In his summary judgment papers, Defendant disputed his assistance

23  in the liquidation or sale of securities to Red Rock's clients (Dkt. No. 57-1;

24  Dkt. No. 103-1), and argued disgorgement was inapplicable to him as a

25

26

27  [3] SEC's evidence further calls into question whether Red Rock's clients
incurred losses or otherwise suffered financial harm at the point of sale.

28  (See Dkt. No. 37 at 5:2-13.)

ANTHONY SPENCER'S OPPOSITION TO PLAINIFF'S MOTION FOR
ORDER TO SHOW CAUSE FOR CONTEMPT

1  former employee of Red Rock. (Dkt. No. 57 at 17:4-28, fn. 2.) Specifically,

2  Defendant argued disgorgement is limited to the "net profits" of owners or

3  partners "engaged in concerted wrongdoing." (*Id*. at 17:14-20 (*citing Liu*,

4  140 S. Ct. at 1940; *S.E.C. v. Glob. Express Cap. Real Est. Inv. Fund, I,*

5  *LLC*, 289 F. App'x 183, 190 (9th Cir. 2008) (reversing summary judgment

6  for principal, owner, and manager who operated as a salesperson).)

7  Defendant urged the Court to follow *Govil*. (Dkt. No 57 at 17 fn. 2.)

8      The Court did not rule on the parties' pending summary judgment

9  motions but rather moved the hearing date at SEC's request to shortly

10  before trial was scheduled to begin.[4]

11      **C.    Mediation and Judgment.**

12      The parties were ordered to mediation, and the case did not proceed

13  to trial. During mediation it was known by SEC and the mediator that

14  Defendant could not under any circumstance afford to pay the penalty,

15  interest and disgorged funds that SEC sought from him, and it was

16  understood that Defendant would need to enter into a payment plan

17  commensurate with his ability to pay over time. (Dkt. No. 163-22 at 1:23-

18  2:13; Declaration of Tony Spencer ("Spencer Decl."), ¶ 5; Grutman Decl. ¶

19  2.)

20      On April 23, 2024, pursuant to a settlement agreement between the

21  parties negotiated with the assistance of the mediator, the Court entered

22  the Judgment. (Dkt. No. 150.) The Judgment ordered Defendant to pay

23  more than $2 million in disgorgement, interest, and a penalty, and he was

24  restrained from working as an investment adviser. (*Id*. at 8:11-18.) The

25  Judgment further requires that "SEC shall hold the funds, together with

26  _____

27  [4] In response to Defendant's summary judgment motion, on March 29,
    2024, the Court requested briefing on whether Defendant acted as an

28  investment adviser on behalf of Red Rock. (Dkt. No. 129.)

ANTHONY SPENCER'S OPPOSITION TO PLAINIFF'S MOTION FOR
ORDER TO SHOW CAUSE FOR CONTEMPT

any interest and income earned thereon, pending further order of the Court." (*Id*. at 9:25-26.) The Judgment did not identify any victims who might receive funds paid in disgorgement, and the order for disgorgement as to Defendant does not state it is "appropriate and necessary for the benefit of investors." The underlying settlement agreement to the consent decree does not specify what terms would apply to the disgorgement amount from Defendant despite its inclusion in the Judgment. (Grutman Decl., ¶ 4.)

**D.    <u>Additional Relevant Pre- and Post-Judgment Discovery.</u>**

SEC propounded written discovery and conducted depositions in this action. Some of the depositions involved former clients of Red Rock. However, SEC did not present any evidence, nor did the Court rely on evidence, that former Red Rock clients had already sold their purchases at a loss or incurred a loss by selling their precious metal coins. (Grutman Decl., ¶ 5.)

The evidence presented by SEC was primarily testimony and data from a person SEC presented as an expert witness. SEC's expert declared that he received approximately 1,300 documents in preparing his declaration in support of SEC's summary judgment briefing, including transaction data of Red Rock, Red Rock's wholesale metals distributors and other investigative materials and testimonies obtained by SEC. (Dkt. No. 82-8 at 20:1-18.) The expert's declaration did not address or present any information concerning sales by Red Rock's clients of their purchases of precious metals coins from Red Rock. He did not identify any losses actually incurred by Red Rock's clients following their metals purchases from Red Rock. (Id.) SEC did not present to the Court any evidence of losses actually incurred by Red Rock's clients attributable to Defendant's own sales efforts. (Grutman Decl., ¶ 6.) SEC arbitrarily determined at the

7

time of the Judgment that all of Red Rock's clients had suffered losses and pinned them on Defendant for purposes of disgorgement solely on the basis of compensation and commissions Defendant earned from Red Rock. (Id.)

Defendant has been unemployed since August 2022, as a result of SEC's press releases issued before the Judgment was entered. (Dkt. No. 187-1 at 2:22-27; Spencer Decl., ¶ 6.) He has no assets and limited earning capacity, and he currently lives along with his family off only his wife's income. (Dkt. No. 187-1 at 2:28-5:20) Defendant has been voluntarily making payments to SEC that he can afford while actively seeking SEC's approval on a payment plan. (Grutman Decl., ¶ 8; Spencer Decl., ¶ 6.)

**E.    SEC Refused to Agree to a Payment Plan.**

Since the Judgment was entered, Defendant persistently attempted in good faith to set up a payment plan with SEC given his understanding of what was required of him in light of his financial inability to pay the Judgment against him. (Dkt. No. 187-1 at 1:7-2:21 (citing Dkt. No. 163-22 and Dkt. No. 175-1; Spencer Decl., ¶¶ 3,4.) Defendant complied with every post-judgment discovery request and informal disclosure instructions of SEC, including sitting for a post-judgment deposition. (Grutman Decl., ¶¶ 7-9; Spencer Decl., ¶ 2.) Yet SEC has refused to enter into any payment plan with Defendant. (Dkt. No. 187-1 at 2:7-21; Grutman Decl., ¶ 10; Spencer Decl., ¶¶ 3,4.)) SEC's persistent refusal to agree to any payment plan, no matter what Defendant offered, serves as a repudiation by SEC of the Judgment. (Grutman Decl., ¶ 11.) After setting up roadblocks to reasonable progress payments, SEC then moved for contempt (and then sanctions) to punish Defendant for not paying the disgorgement owed despite Defendant's documented financial inability to pay and continued good faith efforts to establish a payment plan that he could pay.

/ / /

ANTHONY SPENCER'S OPPOSITION TO PLAINIFF'S MOTION FOR ORDER TO SHOW CAUSE FOR CONTEMPT

**F.    Red Rock Went Out of Business.**

After Judgment was entered, Red Rock went out of business. (Dkt. No. 163-22 at 1:25-28.) Earlier in the case, Red Rock had indemnified Defendant as required under California Labor Code section 2802. (Grutman Decl., ¶ 8.) However, because Red Rock no longer exists, Defendant is on his own with a huge financial obligation. (Dkt. No. 163-22 at 1:25-28)

**G.    SEC Moved for Contempt Against Defendant.**

On December 8, 2024, SEC filed a Motion for Order to Show Cause Why Defendant Should Not be Held in Civil Contempt. (Dkt. No. 156-1.) SEC's stated purpose for moving for contempt was "to collect Spencer's ill-gotten gains so that, if feasible, they can be returned to harmed investors." (*Id*. at 1:10-12.)  Defendant filed an opposition (Dkt. No. 166.), and SEC filed a reply. (Dkt. No. 169.) SEC reiterated in its briefing that it took this step "so that the SEC can seek contempt sanctions, collect what Spencer owes, and return funds to harmed investors if feasible. (*Id*. at 4:6-8.)

The Court agreed with SEC, and on January 14, 2025, ordered Defendant to show cause in writing why he should not be held in contempt and to propose a payment plan commensurate with his ability to pay. (Dkt. No. 173.) On January 28, 2025, Defendant responded to the Court, evidencing his inability to pay the Judgment and proposing a payment plan. (Dkt. No.175.) SEC responded that the Court should reject Defendant's proposed payment plan. (Dkt. No. 176.)

On February 7, 2025, the Court found Defendant in contempt and ordered him to make an initial $1 million payment within 15 days of its order, not draw down on a home equity line of credit and establish a payment plan with Plaintiff within 45 days. (Dkt. No. 180.)

On March 17, 2025, SEC moved for civil contempt sanctions against

9

Defendant, including incarceration, despite Defendant's proven inability to pay $1 million as ordered and obtain SEC agreement on a payment plan. (Dkt. No. 186-1.) SEC stated: "As the SEC explained in its contempt application, if feasible, the SEC seeks to return these funds to harmed investors." (Id. at 3:18-19.) Defendant filed an opposition on March 24, 2025 (Dkt. No. 187), and SEC filed a reply on March 28, 2025, again urging the Court to incarcerate Defendant. (Dkt. No. 188.) SEC has never agreed or proposed a plan enabling Defendant to pay over time and thus has repudiated the Judgment. (Grutman Decl., ¶ 10.)

## H.  <u>The Prices of Gold and Silver Rose Despite SEC's Prediction.</u>

As of the filing of this motion, the spot price of an ounce of gold is $3,500.10 and the spot price of an ounce of silver is $33.12. (Grutman Decl., ¶ 13.) For gold, this is approximately 55.6% above its price one year ago at the time of entry of Judgment and 130.4% above its price five years ago when purchases were made by Red Rock's clients; for silver, this is approximately 31.5% above its price one year ago and 84.7% above its price five years ago. (*Id.*; Dkt. No. 82-8 at 18:12-19 (explaining through SEC's expert testimony the changes in precious metals markets in the United States after March 2020.)). Applying the analysis of SEC's expert testimony to the basis for the Judgment, there no longer are client losses on which to support the disgorgement due to faulty assumptions made by SEC. (*Id.* at 11:23-12:3.)

## III.  LEGAL STANDARD

Because an approved consent decree represents a court judgment, a party seeking relief from its terms must establish one of the grounds identified in Rule 60(b). *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992) (concluding "[t]here is no suggestion in these cases that a

1  consent decree is not subject to Rule 60(b).”). In deciding whether to

2  modify a consent decree, courts act in their “traditional equity role” and

3  “take all the circumstances into account.” *Bellevue Manor Assocs. v. United*

4  *States*, 165 F.3d 1249, 1256 (9th Cir. 1999). The Ninth Circuit has

5  confirmed that the standards set forth in *Rufo* provide a “general, flexible

6  standard for all petitions brought under the equity provision of Rule

7  60(b)(5).” *Id.* at 1255.

8      Rule 60(b) provides for relief from judgment upon a showing of (1)

9  mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3)

10  misrepresentation; (4) a void judgment; (5) a satisfied or discharged

11  judgment, or where or applying the judgment prospectively is no longer

12  equitable; or (6) extraordinary circumstances justifying relief. *Fed. R. Civ*

13  *Proc. 60(b); Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991).

14  **IV.   LEGAL ANALYSIS**

15      Defendant is entitled to relief from the disgorgement, penalty and

16  interest terms of the Judgment under Rule 60(b)(5) or, alternatively, Rule

17  60(b)(6).

18      **A.   <u>Changes in Circumstances Require Modification of the</u>**

19           **<u>Judgment Under Rule 60(b)(5).</u>**

20      Rule 60(b)(5) authorizes relief from a judgment when “applying it

21  prospectively is no longer equitable.” Id.; *see also Schrubb v. Blankenship*,

22  No. 219CV06557MWFGJS, 2022 WL 3971054, at *2 (C.D. Cal. July 26,

23  2022) (noting “Rule 60(b)(5) typically applies to cases involving injunctions

24  or consent decrees.”) The Ninth Circuit has confirmed that the standards

25  set forth in *Rufo* provide a “general, flexible standard for all petitions

26  brought under the equity provision of Rule 60(b)(5).” *Bellevue Manor*

27  *Associates*, 165 F.3d at1255.

28      The “party seeking modification of a consent decree bears the burden

11

of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383; *see also California by & through Becerra v. U.S. Env't Prot. Agency*, 978 F.3d 708, 716-18 (9th Cir. 2020 (finding "the weight of authority confirms that, once the legal basis for an injunction has been removed, such that the law now permits what was previously forbidden, it is an abuse of discretion to not modify the injunction.") The movant must show that "a 'significant change either in factual conditions or the law' occurred" after the judgment." *Labor/Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120 (9th Cir. 2009) (quoting *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005)). "[The movant] must demonstrate that the change was not 'anticipated at the time it entered into [the] decree.'" *Id.* at 1120 (*quoting Asarco*, 430 F.3d at 979). "[The movant] must show that the changed factual circumstance makes 'compliance with the consent decree more onerous, unworkable, or detrimental to the public interest.'" *Id.* (*quoting Asarco*, 430 F.3d at 979). While a movant is required to show that the change in factual circumstances was not actually anticipated at the time it entered into the agreement, the movant is not required to show that the changed circumstances were unforeseeable. *See Evans v. Williams*, 206 F.3d 1292, 1298 (D.C. Cir. 2000).

      1.   The current prices of gold and silver negate the victim-benefit requirement for disgorgement.

The current prices of gold and silver have risen significantly. (Grutman Decl., ¶¶ 12-13, as of April 21, 2025.) Gold is approximately 56% above its price one year ago when the Judgment was entered and 130% above its price five years ago around the time that sales were made; the price of silver is approximately 32% above its price from one year ago and 85% above its price from five years ago. (Id., ¶ 13; Dkt. No. 82-8, at

ANTHONY SPENCER'S OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE FOR CONTEMPT

16:19-26 ("To put these numbers in context, today's price of silver is approximately $23 per ounce (as of 2/21/2024), and the price of gold is approximately $2,025 per ounce (as of 2/21/2024). The highest recorded historic price of silver was approximately $50 per ounce (reached in 1980) and for gold was $2,155 per ounce (reached in 2023)."); Dkt. No. 82-8, at 18:12-19 (explaining the changes in precious metals markets in the United States after March 2020.))

The clients of Red Rock, who SEC refers to as "harmed investors", could sell today at a gain and avoid financial harm according to the theory of loss presented by SEC's expert – they own tangible assets of increasing value that can be resold at a profit to anyone they choose. (Grutman Decl., ¶¶ 13-15; compare Dkt. No. 82-2 11:23-12:3 ("the value of RTH Coins would have to have increased by far more than 30% for Spencer's clients to have realized any gains from their coin purchases."))

"One of the equitable limitations identified in *Liu* is that disgorgement must be 'awarded for victims.'" *Govil*, 86 F.4th at 94 (quoting *Liu*, 140 S. Ct. at 1940); *see also Liu*, 140 S. Ct. at 1948 ("The equitable nature of the profits remedy generally requires the SEC to return a defendant's gains to wronged investors for their benefit."); *Almagarby*, 92 F.4th at 1320 (holding victim-benefit requirement met where SEC's expert could digitally track "counterparties who had purchased shares from [the defendant] and were negatively affected by the price impact of his selling activity"); *SEC v. Blackburn*, 15 F.4th 676, 682 (5th Cir. 2021) (affirming disgorgement post-*Liu* when the "[the Commission] has already identified" the victim-recipients of the "money [that] the defendants [will] return").

Recently, the First Circuit vacated a lower court's disgorgement award after it found legal errors for relying on "inadequately supported assumptions made by SEC" and failing to properly attribute harm to the

ANTHONY SPENCER'S OPPOSITION TO PLAINIFF'S MOTION FOR ORDER TO SHOW CAUSE FOR CONTEMPT

defendant's alleged wrongdoing or account for his legitimate expenses. *Commonwealth Equity Services, LLC*, No. 24-1427 (April 1, 2025), at *20, 36-43) (overruling the district court's adoption of disgorgement figure submitted by SEC without testimony from clients and where "SEC's motion and supporting evidence in many ways assumed that these investors were identically situated.") Similar shortcomings exist here where SEC failed to identify clients who suffered losses or conduct an appropriate accounting as to the responsibility of Defendant for any loss.

SEC has never demonstrated actual losses for the allocation of disgorged funds attributable to Defendant, before or following the Judgment. *See Govil*, 86 F.4th at 94 (*quoting Liu*, 140 S. Ct. at 1940); *Beck*, 2024 WL 1626280, at *14; *SEC v. Mizrahi*, 2020 WL 61149112, at *2 (C.D. Cal. Oct. 5, 2020) (ordering return of disgorged funds to defendant's clients "in proportion to the amount of their losses"). Rather, SEC has maintained a theory of liability premised on facts and expert testimony that are outdated today in light of the current price of silver (and other precious metals). SEC has also generally relied on total commissions and compensation Defendant earned from Red Rock in establishing disgorgement, interest and penalty figures in this case. (Dkt. No. 82-2 at 2:22-24.)

Today's prices demonstrate that Red Rock's clients could enjoy gains that have been wrongly counted as losses by SEC. (Dkt. No. 82-2 11:23-12:3.) The disgorgement in the Judgment against Defendant is premised on faulty assumptions and speculative victims and fails to meet the legal requirements of *Liu*. *See Almagarby*, 92 F.4th at 1320 ("The expert explained that 'the vast majority of counter-parties to the relevant sales of shares by [Almagarby] can readily be identified.'"); *Commonwealth Equity Services, LLC*, No. 24-1427 (April 1, 2025), at *40-43. SEC cannot claim or

14

prove that Red Rock clients suffered losses, nor are the pricing assumptions on which the Judgment is based valid. The disgorgement, interest and penalty that SEC seeks to squeeze from Defendant with draconian force fails to follow principles of equity and must be vacated.

### 2. SEC's refusal to negotiate payments became an obstacle to compliance with the Judgment.

Despite Defendant's persistent good faith efforts to satisfy the Judgment commensurate with his financial condition as an unemployed former salesperson, SEC has stonewalled a payment plan with Defendant. Defendant has presented evidence to the Court demonstrating his inability to satisfy the Judgment without a payment plan. (Grutman Decl., ¶¶ 8-11.) SEC has thwarted any possible agreement by not agreeing to any amount offered or counter-proposing anything reasonable. (*Id*.) SEC left Defendant's most recent offer open without response and instead moved for contempt sanctions, including Defendant's incarceration. (*Id*., ¶ 10.) SEC's actions in this respect demonstrate a repudiation of the Judgment requiring relief for Defendant.

### B. Extraordinary Circumstances Support Relief for Defendant under Rule 60(b)(6).

Rule 60(b)(6) is a "catch-all" provision allowing for relief from a judgment or order for "any other reason that justifies relief." *Id*.; *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005), *overruled on other grounds by United States v. Washington*, 593 F.3d 790 (9th Cir. 2010). It applies when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60 and where "extraordinary circumstances" exist. *Id*.; *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434, 459 (9th Cir. 2019) ("In *Phelps*, because the petitioner sought the benefit of a favorable change in the law, the fact that the petitioner had

15

been diligent in advancing the legal position that was ultimately adopted by that change in the law was relevant to the equitable considerations implicated by a Rule 60(b)(6) motion.").

Federal courts in the Ninth Circuit consider six factors in determining whether relief under Rule 60(b)(6) is warranted: 1) "the nature of the intervening change in the law"; 2) the movant's "interest in pursuing relief"; 3) the parties' "reliance interest in the finality of the case"; 4) "the delay between the judgment and the Rule 60(b) motion"; 5) "the relationship between the original judgment and the change in the law"; and 6) "concerns of comity." *Id.* at 446-53 (*citing Phelps*, 569 F.3d at 1135-39). These six factors are "not meant to impose a rigid or exhaustive checklist, however, as the Court has pointed out, because Rule 60(b)(6) is a grand reservoir of equitable power, and it affords courts the discretion and power to vacate judgments whenever such action is appropriate to accomplish justice." *Id.* at 445 (*citing Phelps*, 569 F.3d at 1135) (internal quotation marks and alterations omitted). When "a district court is faced with applying [the *Phelps*] factors in an entirely new context, the court should assess how that different context might alter the calculus of the factors' application, and whether those factors adequately capture all of the relevant circumstances." *Id.* at 446.

Additionally, a party's repudiation of a settlement agreement that terminated a litigation can constitute extraordinary circumstances. *See Keeling v. Sheet Metal Workers Intern. Ass'n, Local Union 162*, 937 F.2d 408, 410 (9th Cir.1991); *Sunnergren v. Cate*, No. C 12-0979 LHK (PR), 2015 WL 6667478, at *2 (N.D. Cal. Nov. 2, 2015) (noting evidence of noncompliance in repudiation of a settlement agreement that terminated litigation pending before a court constitutes an "extraordinary circumstance").

16

ANTHONY SPENCER'S OPPOSITION TO PLAINIFF'S MOTION FOR ORDER TO SHOW CAUSE FOR CONTEMPT

1      Here, the Rule 60(b)(6) factors favor Defendant. SEC's refusal to
2 accept any payment plan has rendered it frustratingly impossible for
3 Defendant to be in compliance with the Judgment. (Grutman Decl., ¶ 11.)
4 Defendant has made good faith efforts to set a payment plan and faces
5 coercive sanctions, including incarceration. (*Id.*, ¶¶ 8-10) This motion was
6 brought promptly when the alleged losses forming the basis for the
7 Judgment were wiped out due to rising metals prices, certainly within the
8 one-year time limit applicable to some subsections of Rule 60. (*Id.*, ¶ 16.)
9 Recent changes in Ninth Circuit caselaw concerning disgorgement efforts
10 by SEC make modification of the Judgment even more appropriate and
11 timely, since doing so would comport with prevailing caselaw in other
12 circuits following *Liu. Govil*, 86 F.4th at 94; *Commonwealth Equity
13 Services, LLC*, No. 24-1427 (April 1, 2025), at *40-43.

14      The circumstances here are extraordinary in light of the steps that
15 SEC has taken to force disgorgement from Defendant. *See also Shuffler v.
16 Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir.1983) (holding it improper to
17 use contempt sanctions as a tool to collect a judgment). Even more
18 extraordinary is how the increase in precious metals prices have wiped
19 away the basis for SEC's case against Defendant and the prior losses
20 assumed and attributed to Red Rock's clients. *Phelps*, 569 F.3d at 1135;
21 *Rufo*, 502 U.S. at 383; (Grutman Decl., ¶¶ 13-15 ). It would be manifestly
22 unjust for the Court to require payment of the disgorgement, interest and
23 penalty in the Judgment against Defendant under these circumstances
24 without substantial modification consistent with the change in facts
25 concerning Red Rock clients' assumed losses based on precious metals
26 prices and changes in the law.
27 / / /
28 / / /

ANTHONY SPENCER'S OPPOSITION TO PLAINIFF'S MOTION FOR
ORDER TO SHOW CAUSE FOR CONTEMPT

## V.    CONCLUSION

For all the foregoing reasons, Defendant's motion should be granted and the disgorgement, interest and penalty amounts vacated, and the Judgment against him modified accordingly.

DATED:  April 23, 2025            THE TORREY FIRM PC

By:    /s/ Judd Grutman
       JUDD GRUTMAN
       Attorneys for Defendant
       ANTHONY SPENCER

ANTHONY SPENCER'S OPPOSITION TO PLAINIFF'S MOTION FOR ORDER TO SHOW CAUSE FOR CONTEMPT

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Anthony Spencer, certifies that this brief contains 5,156 words. This brief complies with the word limit of L.R. 11-6.1 and the Court's Individual Practice 6, which requires that Memoranda of Points and Authorities shall not exceed 20 pages, nor exceed 5,600 words.


Dated: April 23, 2025                    /s/ Judd Grutman
                                         _____
                                         Judd Grutman

CERTIFICATE OF SERVICE

1

## <u>CERTIFICATE OF SERVICE</u>

2

3    I hereby certify that I electronically filed the foregoing document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

4

5

6    I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct.

7

8

9    Dated: April 23, 2025          /s/ Judd Grutman

10                                   _____

11                                   Judd Grutman

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28