MAUREEN PEYTON KING (NY Bar No. 4119376)
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
Email:  kingmp@sec.gov
Telephone: (212) 336-0111

LOCAL COUNSEL:
STEPHEN KAM (Cal. Bar. No. 327576)
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Email: KamS@sec.gov
Telephone: (323) 302-7465
Facsimile: (213) 443-1904

Attorneys for Plaintiff
Securities and Exchange Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>RED ROCK SECURED, LLC, SEAN KELLY, ANTHONY SPENCER, AND JEFFREY WARD,<br><br>Defendants. | Case No. 2:23-cv-3682-RGK-PVC<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT SEAN KELLY SHOULD NOT BE HELD IN CIVIL CONTEMPT**<br><br>Judge:  Hon. R. Gary Klausner<br>Hearing Date: July 14, 2025<br>Time:  9 a.m.<br>Location:  Courtroom 850<br><br>Action Filed:  May 15, 2023<br>Post-Judgment. |

## <u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES...........................................................................................................ii

INTRODUCTION ............................................................................……………1

PRELIMINARY STATEMENT……………………………………………....… 1

PROCEDURAL HISTORY……………………………..……………………....1

    I.     Kelly's Assets Exceed $1.8 Million…………………………………………2

    II.    Kelly's Spending Exceeds $10,000 Per Month…………………………...3

    III.   Kelly Has an Ability to Pay………………………………………...…..4

ARGUMENT………………………………………………………………...4

    I.     The SEC Easily Demonstrates Kelly's Contempt…………………………4

    II.    Kelly Has No Viable Defense to Contempt as He is Able to Pay…………5

    III.   The Court Should Enter An Order To Show Cause………..…………...7

CONCLUSION……………………………..………………………………..8

# <u>TABLE OF AUTHORITIES</u>

*Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376 (9th Cir. 1986)………………..7

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993)……………………………………………………………………………4

*In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003)………………………………………7

*NLRB v. Trans Ocean Export Packing, Inc.,* 473 F.2d 612 (9th Cir.1973)………....5

*S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12 (D.D.C. 2000), aff'd, 75 F. App'x 3 (D.C. Cir. 2003)……………………………………………………………………………....5

*S.E.C. v. Musella*, 818 F. Supp. 600 (S.D.N.Y. 1993)…………………………..6

*Smagin v. Yegiazaryan*, No. 214CV09764RGKPLA, 2023 WL 4002730 (C.D. Cal. May 22, 2023)……………………………………………………………………....7

*Spallone v. United States*, 493 U.S. 265 (1990)…………………………………….6

*United States v. Bright*, 596 F.3d 683 (9th Cir. 2010) (internal cites omitted))……..4

*United States v. Bright,* No. CIV. 07-00311 ACKKSC, 2009 WL 2971796 (D. Haw. Sept. 15, 2009)……………………………………………………………………....5

*United States v. United Mine Workers of Am.,* 330 U.S. 258 (1947)………………..7

*Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510 (9th Cir. 1992)…………………..6

## INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this Memorandum of Points and Authorities in Support of its Motion for an Order to Show Cause Why Defendant Sean Kelly ("Kelly") Should Not Be Held in Contempt ("Motion").

## PRELIMINARY STATEMENT

Kelly owes the SEC approximately $2.0 million in disgorgement and prejudgment interest and, to date, has failed to pay even a penny of that amount. Docket Entry ("DE") 219-2, Declaration of Maureen Peyton King ("King Decl.") ¶3. The SEC seeks to collect Kelly's ill-gotten gains so that, if feasible, they can be returned to harmed investors. Thus, the SEC respectfully requests that the Court issue an Order to Show Cause as to why Kelly should not be held in contempt. If the Court issues a contempt order, the SEC will seek relief, described more fully below, including an upfront payment, turnover of the proceeds of certain assets, and entry into a payment plan acceptable to the SEC, and accountings for the Kellys' entities.

## PROCEDURAL HISTORY

On May 15, 2023, the SEC filed its original complaint in this action, alleging that from January 2017 through at least June 2022, Kelly, the chief executive officer of Red Rock Secured, LLC, ("Red Rock") and others, defrauded at least 700 clients into liquidating securities in their retirement accounts to purchase so-called "premium" metal coins from Red Rock at inflated prices, netting tens of millions of dollars for Red Rock. DE 1. On August 11, 2023, the SEC filed an Amended Complaint. DE 37.

Kelly consented to a Final Judgment, which the Court entered on April 23, 2024. DE 219-2, King Decl., Ex. 3 (consent), DE 150. The Final Judgment ordered Kelly, within 30 days, to pay the SEC $3,565,969.26 comprised of $1,841,727.89 in disgorgement, representing net profits gained because of the conduct alleged in the Amended Complaint, together with $224,241.37 in prejudgment interest, and a

$1,500,000 civil penalty.[1]  DE 150.  To date, Kelly has paid nothing toward the Final Judgment.  DE 219-2, King Decl. ¶3.

## I.    Kelly's Assets Exceed $1.8 Million.

Kelly's sworn financial statement, provided to the SEC, reflects assets of over $1.8 million as of August 27, 2024.  DE 219-3, King Decl. Ex. 1 (Sworn Financial Statement ("SFS")).

| Category | Approximate Value as of August 2024 | Reference |
|---|---|---|
| Colorado property | $1,200,000 | *Id.* |
| Cash | $195,000 | *Id.* |
| 529 Plans | $225,000 | *Id.* |
| Retirement Funds (held by Mrs. Kelly) | $173,000 | *Id.* |
| Jewelry | $26,000 | *Id.* |
| Road Bike | $3,000 | *Id.* |
| Silver coins | $4,600 | DE 219-2 ¶6, DE-219-6, Ex. 4 (silver price). |
| Total | $1,826,000 | |

The most significant asset is a $1.2 million - mortgage free - property in Colorado – that the Kellys purchased on March 29, 2024 – two weeks before Kelly consented to the Final Judgment against him.  DE 219-3 King Decl. Ex. 1 (SFS), DE 219-4 Ex. 2 (Kelly Depo) at tr. 22-25, DE 219-9 King Decl. Ex.3 (April 12, 2024 Consent).  The Kellys' assets also include hundreds of thousands of dollars in cash, retirement funds, and college savings plans as well as other assets.  DE 219-2, King Decl. Ex. 1. Yet, Kelly asserts that most of the assets are either his wife's or jointly held.  Kelly claims that of the $195,000 in cash, $80,000 is owned separately by Mrs. Kelly as are the approximately $173,000 in retirement funds.[2]  DE 219-3, King Decl.

---

[1] The SEC seeks only disgorgement and prejudgment interest through this order to show cause as the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq.*, sets forth the means by which the federal government collects penalties.

[2] On March 27, 2025, Kelly's counsel represented that at least the jointly held cash is dwindling as the Kellys are spending it.

Ex. 1, 2 at tr. 42-44. Kelly claims that he and his wife jointly own jewelry and watches totaling approximately $26,000.  DE 219-3, King Decl. Ex. 1. Kelly also claims that they jointly own a $3,000 road bike. *Id*.  It is unclear what basis Mr. Kelly has for designating certain assets as solely Mrs. Kelly's and others as jointly held.[3]

Kelly also used distributions from Red Rock Secured to fund two college savings plans for his children.  DE 219-3, King Decl. Ex. 2 (Kelly Depo) at tr. 50-1. Thus, Red Rock funds were used to, in part, fund his children's educational accounts.

In addition, Kelly owns a BMW he estimates at $50,000 and 140 silver coins, each slightly more than an ounce in weight.  DE 219-2, King Decl. Ex. 1 (SFS), Ex. 2 (Kelly Depo) at tr. 77-8. Based on the current value of silver, the coins should be worth more than $4,600. DE 219-5, King Decl. ¶8, Ex. 5 (price of silver).

## II.   Kelly's Spending Exceeds $10,000 Per Month.

As to the Kellys' expenses, they spend over $10,000 per month – without remitting a cent to the SEC.  DE 219-3, King Decl. ¶ 3, Ex. 1 (financials).  Instead, Kelly and his family allocate funds to categories including:

| Category | Monthly Spending | % of Total Expenses | Reference |
|---|---|---|---|
| Food, medicine, dogs | $3,000.00 | 29.2% | DE-219-3, King Decl. Ex. 1 (SFS), p.8. |
| Auto expenses (insurance, financing, gas, tolls) | $2,227.43 | 21.7% | *Id*. |
| Home Expenses (HOA, real estate taxes, home insurance, house, yard, power, water and waste) | $2,143.00 | 20.8% | *Id*. |
| Children's activities | $1,080.00 | 10.5% | *Id*. |
| Insurance (life, health, umbrella) | $920.25 | 9.0% | *Id*. |
| Technology (phones, internet, streaming) | $553.00 | 5.4% | *Id*. |

---

[3] Kelly claims that the $80,000 is Mrs. Kelly's separate property from before their marriage.  DE 219-4 King Decl. Ex. 2 (Kelly Depo) at tr. 42-44.

| Category | Monthly Spending | % of Total Expenses | Reference |
|---|---|---|---|
| Fitness | $180.00 | 1.8% | *Id.* |
| Clothing | $175.00 | 1.7% | *Id.* |
| **Total** | **$10,278.68** | **100%** | *Id.* |

## ARGUMENT

### I.    The Evidence Clearly Demonstrates Kelly's Contempt.

The party alleging civil contempt bears the burden to show: (1) the proposed contemnor violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. *United States v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (internal cites omitted). The SEC meets the burden to show Kelly's contempt.

First, Kelly clearly violated the Court's Final Judgment, to which Kelly consented, that required Kelly to pay approximately $2 million in disgorgement and prejudgment interest ("Disgorgement Obligation") within 30 days of entry of the Final Judgment. DE 150. That deadline expired approximately ten months ago without Kelly paying a cent toward the Disgorgement Obligation. Thus, the SEC meets the first prong necessary to establish contempt.

Second, Kelly has paid nothing toward the Disgorgement Obligation. "'Substantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (internal cite omitted). Kelly, having paid nothing, has neither substantially nor otherwise complied with the Court's Order and, on these facts, cannot claim otherwise. Therefore, the SEC has met the second prong to establish contempt.

4

Third, Kelly's failure to pay has not been based on any good faith or reasonable interpretation of the Final Judgment.   The Final Judgment clearly required Kelly to pay the Disgorgement Obligation within 30 days.  No good faith or reasonable interpretation of this order could result in Kelly not paying even a cent for the more than ten months since its entry.  Thus, the SEC meets this prong of the contempt burden.

Finally, the record demonstrates Kelly's contempt by clear and convincing evidence.  Kelly has access to assets that he could use to at least partly satisfy the Disgorgement Obligation – but he has not done so.  Therefore, the SEC satisfies the fourth and final prong of the contempt burden.

## II.    Kelly Has No Viable Defense to Contempt as He is Able to Pay.

As the SEC has met its burden to show Kelly is in contempt, the burden shifts to Kelly to show why he is not.  For the reasons set forth above, Kelly cannot show good faith or substantial compliance.  Further, Kelly cannot avail himself of the defense that it is impossible for him to pay.

A potential contemnor may avoid contempt "by producing evidence of a present inability to comply…[which is] known as the "impossibility" defense. *United States v. Bright*, No. CIV. 07-00311 ACKKSC, 2009 WL 2971796, at *2 (D. Haw. Sept. 15, 2009) (internal cites omitted).  However, the "[i]nability to comply is only a complete defense if [the defendant] cannot pay any of the judgment; otherwise, he must pay what he can." *S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12, 17 (D.D.C. 2000), aff'd, 75 F. App'x 3 (D.C. Cir. 2003) (internal reference omitted).  The party asserting the impossibility defense must show "categorically and in detail" why he is unable to comply. *NLRB v. Trans Ocean Export Packing, Inc.,* 473 F.2d 612, 616 (9th Cir.1973).

Kelly clearly cannot avail himself of the impossibility defense for two reasons. First, monetizing his assets would allow Kelly to make substantial payments toward

the Disgorgement Obligation.  Second, Kelly spends over $10,000 per month, which he could substantially reduce so that additional payments to the SEC could be made.

As to his current assets (some of which he claims belong to his wife), Kelly has (as of August 2024) $195,000 in cash and $225,000 in 529 accounts that Kelly funded with Red Rock distributions that could be used to pay the SEC immediately. DE 219-4, Kelly Depo., King Decl. Ex. 2 at p.51. In addition, Kelly could liquidate: at least the six watches that comprise about $12,500 of the $26,000 in jewelry Kelly claims he holds jointly with his wife; the $3,000 road bike; a $50,000 BMW; and $4,000 in silver coins. DE 219-3, King Decl. Ex. 1 (SFS).  Collectively, all these assets could be used to pay the SEC over $300,000.  Kelly also has significant home equity.  *Id.*

As to Kelly's spending, a debtor is not "entitled simply to continue living in the style to which he has accustomed himself and, if so doing consumes all his current income…[he is not] absolved of paying his debt because he is rendered financially unable to do so."  *S.E.C. v. Musella*, 818 F. Supp. 600, 611 (S.D.N.Y. 1993).  Rather, a debtor's "obligation to this Court's Judgment must be met even if it would require some real sacrifice."  *Id.*  Therefore, Kelly must evaluate – and reduce – his expenses so that he can make meaningful payments toward his Disgorgement Obligation.

## III.    The Court Should Enter an Order to Show Cause.

As the SEC has demonstrated Kelly's contempt for the Court's Final Judgment and Kelly has no viable defense, the Court should issue the proposed Order to Show Cause that the SEC seeks.  If the Court grants the SEC's Order to Show Cause, the SEC will seek appropriate civil contempt sanctions.

"Civil contempt sanctions must be either 'compensatory or designed to coerce compliance.'  *See In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003). When considering how much to levy in sanctions, the court should utilize 'the minimum sanction necessary to obtain compliance.'  *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 9th Cir. 1992) (citing *Spallone v. United States*, 493 U.S. 265, 280 (1990))."

1  *Smagin v. Yegiazaryan*, No. 2:14-CV-09764-RGK-PLA, 2023 WL 4002730, at *3

2  (C.D. Cal. May 22, 2023), appeal *dismissed*, No. 23-55524, 2023 WL 11811917 (9th

3  Cir. Aug. 2, 2023).  "When imposing sanctions, 'the court should consider the

4  character and magnitude of the harm threatened by continued contumacy, and the

5  probable effectiveness of any suggested sanction.' *Gen. Signal Corp. v. Donallco,*

6  *Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (quoting *United States v. United Mine*

7  *Workers of Am.*, 330 U.S. 258, 304 (1947)) (internal quotation marks omitted)." *Id.* at

8  *5.

9       If the Court grants the Order to Show Cause, the SEC believes it is appropriate

10  for the Court to enter an Order requiring Kelly to: (1) make an upfront payment of

11  $100,000 within 5 days of entry of a contempt order; (2) turnover, within 15 days, of

12  approximately $300,000 in proceeds from the following liquidated assets (with an

13  accounting of each transaction): (i) the 2021 BMW estimated at $50,000, (ii) 140 one-

14  ounce silver coins estimated at more than $4,000; (iii) two 529 plans for Kelly's minor

15  children funded estimated at $225,000;  (iv) six watches including two Panerai

16  watches, two Tag watches,[4] a Frank Muller watch, and a titanium Apple watch

17  estimated at $12,500, (v) a Trek Speed Concept road bike estimated at $3,000; (vi) a

18  cashier's check from Native American Bank estimated at $3-4,000; (3) provide

19  accountings and 12 months of bank statements for all entities, including but not

20  limited to trusts and LLCs, held directly or indirectly by Sean or Monique Kelly

21  (under these names or any alias) within 30 days; (4) make a payment within 120 days

22  of $800,000; and (5) enter into a payment plan satisfactory to the SEC within 120

23  days.

24

25

26

27

28

---

[4] The debtor may be referencing Tag Heuer.

1

**CONCLUSION**

2        For the foregoing reasons, the SEC respectfully requests that the Court issue the

3   proposed Order to Show Cause the SEC seeks as to why Kelly should not be held in

4   contempt.

5

6                                           Respectfully submitted,

7   Dated: June 11, 2025                    /s/ Maureen Peyton King

8                                           Maureen Peyton King
                                            Attorney for Plaintiff
9                                           Securities and Exchange Commission
                                            100 Pearl Street, Suite 20-100
10                                          New York, N.Y. 10004-2616
                                            Email:  kingmp@sec.gov
11                                          Telephone: (212) 336-0111

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Local Rule 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiff Securities and Exchange Commission, certifies that this brief complies with the word limit of L.R. 11-6.1 and the Court's Individual Practice 6, which requires that Memoranda of Points and Authorities shall not exceed 20 pages, nor exceed 5,600 words.

Dated: June 11, 2025

                              /s/ *Maureen Peyton King*
                              MAUREEN PEYTON KING
                              Attorney for Plaintiff
                              Securities and Exchange Commission

# **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

> U.S. SECURITIES AND EXCHANGE COMMISSION,
> 100 Pearl Street, Suite 20-100, New York, NY 10004-2616
> Telephone No. (212) 336-0111

On June 11, 2025, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT SEAN KELLY SHOULD NOT BE HELD IN CIVIL CONTEMPT** (and attachments thereto) on all the parties to this action:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: June 11, 2025

*/s/ Maureen Peyton King*
Maureen Peyton King